# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

№ 18-CV-3246 (RJD) (RER)

———————————————

XIN LONG LIN,

Plaintiff,

VERSUS

NEW FRESCA TORTILLAS, INC., DOING BUSINESS AS FRESCA TORTILLAS; DA ZHONG LI, ALSO KNOWN AS STEVE LI; AND CINDY LI,

Defendants.

———————————————————————

**REPORT & RECOMMENDATION**
May 1, 2019

———————————————————————

**to the Honorable Raymond J. Dearie,
Senior United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Xing Long Lin ("Plaintiff"), commenced this action against New Fresca Tortillas, Inc. ("New Fresca Tortillas" or "Corporate Defendant") and Da Zhong Li and Cindy Li ("Individual Defendants") (collectively, "Defendants") on June 2, 2018, to recover unpaid wages, overtime compensation, and related damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") §§ 190 and 650 *et seq.* (Docket Entry ("Dkt. No.") 1 ("Compl.")).

Before the Court is Plaintiff's motion for default judgment. [1] For the reasons set forth herein, I respectfully recommend that

---

[1] Defendants did not file an appearance. On September 18, 2018, the Clerk of the Court noted Defendants' default pursuant to Fed. Rule Civ. P. 55(a). (Dkt. No. 16). On October 10, 2018, the Plaintiff filed a motion for default judgment. (Dkt. No. 17). On October 12, 2018, Your Honor referred the Plaintiff's motion to me for a report and recommendation on the issues of liability and damages. (ECF Order dated 10/12/18).

Plaintiff's motion for default judgment be granted and that judgment be entered against Defendants, jointly and severally, in the amount of $148,045.42, plus attorneys' fees, costs, and pre- and post-judgment interest.

## BACKGROUND

According to the Complaint, New Fresca Tortillas is a domestic business corporation with its principal place of business in Maspeth, New York. (Compl. ¶ 8). Plaintiff worked as a deliveryman for Defendants six days a week, from March 8, 2016, until January 5, 2018. *Id*. ¶¶ 31–32. Plaintiff typically worked from 11:00 A.M. to 11:00 P.M. on Tuesdays, Wednesdays, Thursdays, Fridays, Saturdays, and Sundays. *Id*. ¶ 32. Plaintiff regularly worked 72 hours per week. *Id*.

From March 8, 2016, to March 7, 2017, Defendants paid Plaintiff a fixed salary of $1,600 per month. *Id*. ¶ 34. From March 8, 2017, to January 5, 2018, Defendants paid Plaintiff a fixed salary of $1,700 per month. *Id*. ¶ 35. Defendants did not pay Plaintiff an overtime premium, or spread-of-hours pay, for any day in which he worked over ten hours. *Id*. ¶¶ 36, 41, 42. Defendants also failed to compensate Plaintiff for the cost of maintaining a motorcycle to deliver food for Defendants' benefit during Plaintiff's employment. *Id*. ¶ 43. Additionally, Defendants never provided Plaintiff with weekly written statements of his wage rates or hours worked. *Id*. ¶ 40.

For the sake of brevity, suffice it to say that I have carefully reviewed the Complaint and Plaintiff's submissions in support of his motion for default judgment. Those submissions, and the fact that Defendants are in default,[2] establish that the Defendants are jointly and severally liable, pursuant to Sections 206(a)(1) and 207(a) of the FLSA, N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12 Sections 146-1.2 and 146-1.4, and NYLL Section 195(3).[3]

## DISCUSSION

### I.    Damages

Upon a motion for default judgment, the court need not accept a plaintiff's allegations relating to damages. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. It is the court's responsibility to establish that damages have an evidentiary basis that can be ascertained with "reasonable certainty." *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 235 (2d Cir. 2012); *see* FED. R. CIV. P. 55(b)(2); *Cardoza v. Mango King Famers Market Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015). Regardless of the evidence adduced, the plaintiff's recovery is limited to the amount and type pleaded.

---

[2] Upon entry of default, Defendants concede all well-pleaded factual allegations in the Complaint relating to liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "It is the court's responsibility to determine if these well-pleaded facts establish the defendants' liability as a matter of law." *Miguel v. Mi Bella Puebla Corp.*, No. 16-CV-1593 (SJ) (RER), 2017 WL 4838820, at *2 (E.D.N.Y. Sept. 9, 2017) (citing *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)).

[3] Defendants are jointly and severally liable because Plaintiff alleges Individual Defendants were the owners or majority shareholders and managers of the Corporate Defendant; that they had the power to hire and fire employees, set wages and schedules, and maintain business records; and that the Corporate Defendant engaged in interstate commerce and had an annual gross volume of sales not less than $500,000, as required by the FLSA. (Compl. ¶¶ 9, 11, 12, 16). *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128–29 (E.D.N.Y. 2011) (holding allegations that individual had authority over personnel and payroll decisions and authority to hire and fire employees adequate to impose joint and several liability).

Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also Silge v. Merz*, 510 F.3d 157, 159–160 (2d Cir. 2007). Thus, Plaintiff's evidentiary submissions and amounts alleged in the Complaint form the basis of the Court's independent damages analysis.

Plaintiff is entitled to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages, and all reasonable attorneys' fees and interest, pursuant to 29 U.S.C. § 216 and NYLL Section 198(1)(a). Since Plaintiff alleges minimum wage and overtime compensation violations under both the FLSA and the NYLL, Plaintiff is entitled to the damages under the statute that affords the greater recovery.[4]

Willful violations of the FLSA are governed by a three-year statute of limitations. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 129, 108 S. Ct. 1677, 100 L.Ed.2d 115 (1988) (citing 29 U.S.C. § 255(a)). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" *Id.* at 133. Under the NYLL, the statute of limitations is six years regardless of willfulness. N.Y. LAB. LAW § 198(3). Plaintiff filed his Complaint on June 2, 2018. (Dkt. No. 1). Because Plaintiff claims that Defendants' violations were willful (Compl. ¶ 21), both the FLSA and the NYLL will cover Plaintiff's claim in full, from March 8, 2016, onward.

A.  Unpaid Compensation Damages

An employee claiming damages for unpaid compensation bears the burden of proving that he was not compensated for work performed. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 252. When an employer does not keep records of wages and hours of employees, as required by law,[5] a plaintiff's "sworn declarations containing information as to rates of pay and estimates of hours worked based on [plaintiff's] recollection" are considered a sufficient basis for the determination of damages, even if the information provided is general and not detailed. *Herrera v. Tri-State Kitchen and Bath, Inc.,* No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at \*\*4, 8 (E.D.N.Y. March 31, 2015) (finding inquest hearing unnecessary where plaintiffs submitted sworn statements regarding their pay rates and hours worked); *Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. Sept. 30, 2011).

Here, Plaintiff submitted a declaration describing his approximate dates of employment, along with his average hours worked and wages received per week. (*See generally* Dkt. No. 18-7 ("Pl. Decl.")). Plaintiff's attorney, John Troy ("Troy"), also submitted a memorandum of law in conjunction with the motion, including tables of damages calculations for each claim. (Dkt. No. 18-6 ("Pl.'s Motion")). Therefore, Plaintiff has met his burden.

---

[4] Because both the FLSA and NYLL are compensatory in nature, "double recovery may result if damages are awarded for the same hours worked" under both statutes. *Cardoza*, 2015 WL 5561033, at \*6 (internal citations omitted).

[5] 29 U.S.C. § 211(c); *see also* N.Y. COMP. CODES R. & REGS. tit 12 § 142-2.1 (2016).

1.  Regular Rate

To calculate a plaintiff's minimum wage compensation, the Court must determine plaintiff's regular hourly wage rate. *Santillan*, 822 F. Supp. 2d at 295. This rate is calculated "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. COMP. CODES R. & REGS. TIT. 12 § 146-3.5.[6] Plaintiff alleges that Defendants paid him a monthly fixed rate of $1,600 from March 8, 2016, to March 7, 2017. (Compl. ¶ 34; Pl. Decl. ¶ 7). Thus, Plaintiff's regular rate for this period of employment was $9.23.[7] Similarly, Plaintiff's regular rate was $9.81 from March 8, 2017, to January 5, 2018, based on his monthly payment of $1,700 for this period of employment.[8] (Compl. ¶ 35) (Pl. Decl. ¶ 8).

2.  Unpaid Minimum Wages

The federal minimum wage does not preempt the state minimum wage. *See* 29 U.S.C. § 218(a). A plaintiff may recover under whatever statute provides the highest measure of damages. *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *R & R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011). Plaintiff was entitled to the following minimum wages under state and federal law: $9 from March 8, 2016, until December 30, 2016; $10.50 from December 31, 2016, until December 30, 2017; $12 from December 31, 2017, until January 5, 2018. 29

U.S.C. § 206(a)(1)(c); N.Y. LAB. LAW § 652 (1); N.Y. COMP. CODES R. & REGS. tit 12 § 142-1.2.

Plaintiff's regular rates demonstrate that Plaintiff was paid below the minimum wage rate from December 31, 2016, until January 5, 2018. From March 8 to December 30, 2016 ("Pay Period 1"), Plaintiff's regular rate was $9.23, above the $9 minimum wage under the NYLL. From December 31, 2016, through March 7, 2017 ("Pay Period 2"), Plaintiff was paid $1.27 below the hourly minimum wage rate ($10.50 – $9.23). For this period, he is owed $486.16 under the NYLL ($1.27 an hour X 40 hours per week X 9.57 weeks). From March 8, 2017, through December 30, 2017 ("Pay Period 3"), Plaintiff was paid $0.69 below the hourly minimum wage rate ($10.50 – $9.81), resulting in $1,174.93 in unpaid minimum wages ($0.69 X 40 hours X 42.57 weeks). From December 31, 2017, through January 5, 2018 ("Pay Period 4"), Plaintiff was paid $2.19 below the hourly minimum wage rate ($12 – $9.81), resulting in $75.34 ($2.19 X 40 hours X 0.86 weeks) in unpaid minimum wage. Consequently, I respectfully recommend that Plaintiff be awarded a sum of $1,736.43 in unpaid minimum wage compensation.

3.  Unpaid Overtime Compensation

Overtime compensation under the FLSA is 1.5 times the regular rate of pay (or the minimum wage, if greater than the regular rate) for each hour worked in excess of forty

---

[6] The New York's Hospitality Industry Wage order, which became effective in 2011 and was amended in 2016, applies to the calculation of Plaintiff's regular rate. Although the Complaint does not make it clear that New Fresca Tortillas is a business in the "hospitality industry" as defined in 12 NYCRR §146-3.1, Plaintiff's description of his employment "support[s] the reasonable inference that Plaintiff worked in a restaurant and was primarily employed delivering prepared food items, placing him in this

hospitality industry." *Miguel*, 2017 WL 4838820, at *5; (Compl. ¶¶ 38, 43).

[7] Plaintiff's regular rate is calculated as follows: (($1,600 (monthly wage) X 12 (months))/52 (weeks))/40 (hours)=$9.23. *See* 12 NYCRR §146-3.5.

[8] Calculated as follows: (($1,700 (monthly wage) X 12 (months))/52 (weeks))/40 (hours)=$9.81.

hours per week. 29 U.S.C. § 207(a)(1). The NYLL Hospitality Wage Order incorporates and restates the FLSA's requirements, albeit with differences in the method of calculating the regular rate of pay. *See* N.Y. COMP. CODES R. & REGS. tit. 12 § 146-1.4. Plaintiff is entitled to the overtime compensation under the Hospitality Wage Order, since it provides "substantially higher" rates for overtime compensation. *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *4 (E.D.N.Y. May 17, 2016).

Here, Plaintiff sufficiently alleges that Defendants did not pay him overtime compensation for 32 hours worked per week (72 hours – 40 hours). (Compl. ¶ 24). Plaintiff's overtime hourly rate for Pay Period 1 should have been $13.85 ($9.23 X 1.5) per hour.[9] Thus, Plaintiff is entitled to $18,867.02 in overtime compensation for this period (32 hours X $13.85 X 42.57 weeks). Plaintiff's overtime premium during Pay Period 2 should have been $15.75 ($10.50 X 1.5), thus entitling Plaintiff to $4,823.28 in overtime compensation (32 hours X $15.75 X 9.57 weeks). Plaintiff's overtime premium during Pay Period 3 should have been $15.75 ($10.5 X 1.5), resulting in $21,455.28 in unpaid overtime compensation (32 hours X $15.75 X 42.57 weeks). Plaintiff's overtime premium during Pay Period 4 should have been $18 ($12 X 1.5). Thus, Plaintiff is entitled to $495.36 in unpaid overtime compensation (32 hours X $18 X 0.86 weeks). In sum, I respectfully recommend that Plaintiff be awarded a total of $45,640.94 in unpaid overtime wages.

4. Spread of Hours Compensation

The Hospitality Industry Wage Order's spread-of-hours provision requires employers to pay employees working shifts of ten or more hours one additional hour of pay at the minimum statutory wage rate. N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (a). Employees in the hospitality industry are eligible for spread-of-hours compensation whether or not they are paid below the minimum wage. *Id.* § 146-1.6 (d); *see Miguel*, 2017 WL 4838820, at *5 ("As of January 1, 2011, . . . amendments to NYLL in 2011 'extended spread of hours protection to "all employees in restaurants . . . regardless of a given employee's regular rate of pay"'" (internal citation omitted)).

Plaintiff adequately states a claim for recovery of unpaid spread-of-hours damages. Plaintiff worked 12 hours each day from Tuesday to Sunday during the time periods at issue. (Compl. ¶ 32). For Pay Period 1, Plaintiff is entitled to $2,298.78 in spread-of-hours compensation ($9 X 6 days X 42.57 weeks). For Pay Period 2, Plaintiff is entitled to $602.91 in spread-of-hours compensation ($10.50 X 6 days X 9.57 weeks). During Pay Period 3, Plaintiff should have been paid $2,681.91 in spread-of-hours compensation ($10.50 X 6 days X 42.57 weeks), and during Pay Period 4, $61.92 in spread-of-hours wages ($12 X 6 days X 0.86 weeks). In sum, I respectfully recommend that Plaintiff be awarded $5,645.52 in spread-of-hours compensation due to Defendants' violations of 12 NYCRR Section 146-1.6.

5. Reimbursement of Motorcycle Costs

Under the FLSA and the NYLL, Plaintiff should be reimbursed for the out-of-pocket costs of tools that were "used in or . . . specifically required for the performance of the employer's particular work." 29 C.F.R. § 531.35; N.Y. COMP. CODES R. & REGS. tit. 12, § 146-2.7 ("If an

---

[9] Under the Hospitality Industry Wage Order, "an employer shall pay an employee for overtime at a wage of 1 ½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek." N.Y. COMP. CODES R. & REGS. tit. 12 § 146-1.4.

employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage").

Plaintiff sufficiently alleges that Defendants required Plaintiff to maintain a motorcycle[10] to deliver food, and to bear the "out-of-pocket" cost associated with the motorcycle. (Compl. ¶¶ 43, 44, 72, 73). *See Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257 (S.D.N.Y. 2008) ("There is no question . . . that vehicular transportation— whether by bicycle or motorbike—was a necessary component of the job of the deliverymen," because "[t]he primary role of these men was to deliver hot meals to hungry and often impatient customers over a large geographic expanse"); *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) ("Vehicles such as bicycles, motorcycles, and mopeds are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment" (internal citation omitted)). Thus, Plaintiff is entitled to have the cost of operating a motorcycle accounted for in calculating his wage during the relevant time periods. *See Saigon Grill, Inc.*, 595 F. Supp. 2d at 258. ("[I]n measuring wages we take into account the costs that plaintiffs incurred in purchasing bicycles after they were hired and in repairing them during their employment by defendants").

The Complaint demands reimbursement calculated using the IRS standard mileage

rate, in lieu of Plaintiff's actual expenses. Standard reimbursement rates may be used in FLSA cases for determining employees' vehicle expenses where an automobile is a "tool of the trade." *See Bordeau v. V & J Emp't Servs., Inc.*, No. 17-CV-188 (BKS) (CFH), 2018 WL 2041617, at *7 (N.D.N.Y. Mar. 27, 2018) (concluding that "the IRS mileage rate may suggest a reasonable approximation [of vehicle expenses]"); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015) (quoting DOL Handbook § 30c15(a) for the proposition that the IRS standard business mileage rate "may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes"). However, Plaintiff's use of the IRS standard mileage rate here is unsupported, since the IRS rate does not properly reflect the reasonable cost of operating a *motorcycle. See Travel, Entertainment, Gift, and Car Expenses*, IRS Publication 463, at 14–15 (2017), https://www.irs.gov/pub/irs-pdf/p463.pdf (Standard mileage rate is used to approximate "the cost of operating [a] car"; "car" is defined as "any four-wheeled vehicle (including a truck or van) made primarily for use on public streets, roads, and highways"). Instead, I find that the calculation based on the Motorcycle Reimbursement Rates from the United States General Services Administration (GSA) offers a more reasonable approximation of Plaintiff's costs.[11] Thus, I respectfully recommend that

---

[10] Although the Complaint uses general terms, "automobile" and "vehicles," to describe the transportation tool that Defendants required from the deliverymen (Compl. ¶¶ 72–73), the Complaint specifically alleges that Plaintiff was "required to bear the cost of maintaining a motorcycle to deliver food for Defendants' benefit." *Id.* ¶ 43. Despite the inconsistency, I recommend that Plaintiff be awarded reimbursement for the cost of operating a motorcycle, not a car.

[11] The GSA prescribes the Privately Owned Vehicle (POV) Mileage Rates, including the Motorcycle Rates, for official travel by federal employees and for court appearance by witnesses. *See* 5 U.S.C. § 5704(a)(1); 5 U.S.C. § 5707; 28 U.S.C. § 1821(c)(2). *See also Aretakis v. United Airlines, Inc.*, No. 15-CV-6313 (ENV) (JO), 2017 WL 3037482, at *3 (E.D.N.Y. June 23, 2017), *R & R adopted*, 2017 WL 3037403 (E.D.N.Y. July 17, 2017) (calculating plaintiff's travel costs based on GSA POV Mileage Rates). Although there is no case law addressing whether the GSA rates

Plaintiff be awarded $15,999.82 as reimbursement of motorcycle costs,[12] as the sum of the following: $7,164.53 ($0.51 X 55 miles X 6 days X 42.57 weeks)[13] for Period 1; $1,594.84 ($0.505 X 55 miles X 6 days X 9.57 weeks) for Period 2; $7,094.29 ($0.505 X 55 miles X 6 days X 42.57 weeks) for Period 3; $146.16 ($0.515 X 55 miles X 6 days X 0.86 weeks). *See* Privately Owned Vehicle (POV) Mileage Rates (Archived), GSA, https://www.gsa.gov/travel/plan-book/transportation-airfare-rates-pov-rates/privately-owned-vehicle-pov-rates/pov-mileage-rates-archived (last visited February 28, 2019) (the GSA motorcycle rates for 2016, 2017, and 2018 were $0.51, $0.505, and $0.515 per mile, respectively).

6.   Record-Keeping

The New York Labor Law further requires that employer "establish, maintain and preserve for at least six years weekly payroll records . . . ." N.Y. LAB. LAW § 195(4); N.Y. COMP. CODES R. & REGS. tit. 12 § 146-2.1. Plaintiff alleges that Defendants

failed to establish and preserve Plaintiff's weekly payroll records.

Plaintiff's record-keeping claim fails as a matter of law, because "no 'independent cause of action' for violations of New York's recordkeeping requirements exists." *In re Domino's Pizza Inc.*, No. 16-CV-6274 (AJN) (KNF), 2018 WL 1587593, at *7 (S.D.N.Y. Mar. 27, 2018) (finding no independent cause of action under either NYLL § 195(4) or 12 NYCRR § 146-2.1); *see also Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 571 (E.D.N.Y. January 12, 2015) ("[N]othing in the NYLL authorizes an independent cause of action based on a violation of § 195(4)").

7.   Provision of Meal Period

Under the NYLL, "[a]n employee who works a shift of more than six hours which extends over the noon day meal period is entitled to at least thirty minutes off within that period for the meal period." N.Y. LAB. LAW § 162.

Plaintiff alleges that Defendants violated NYLL § 162 by failing to provide the requisite meal periods for every day that

---

may be used for reimbursement calculations under the FLSA or the NYLL, I find it appropriate to use them here, since Plaintiff's motorcycle should have used gasoline and experienced wear and tear much like a motorcycle used by a federal employee or a witness.

[12] Awarding the cost reimbursement increases the total amount of the compensatory damages above the amount of damages demanded in Plaintiff's Affidavit of Damage Calculation (Dkt. No. 17-6), due to Plaintiff Counsel's apparent miscalculation. In the default-judgment context, correction of counsel's miscalculation is permissible, even if the resulted award exceeds the amount plaintiff requested. See *Med. Econ. Co. v. Healthexchange, Inc.,* No. 01-cv-11262 (KMW) (AJP), 2003 WL 22346391, at *2 (S.D.N.Y. Oct. 15, 2003) ("Plaintiff . . . should not lose out because of such a calculation error by its counsel." (citation omitted)). Further, the Complaint clearly sought the reimbursement of Plaintiff's out-of-pocket costs on the basis of the IRS mileage rates, without giving the number. This was sufficient to afford

Defendants notice of the possible extent of cost reimbursement that could be awarded against them upon their default. *See Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-CV-8333 (PGG) (DF), 2016 WL 11523365, at *13 (S.D.N.Y. Nov. 7, 2016), *R & R adopted*, 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *Silge*, 510 F.3d at 160 ("[Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause [in the complaint], satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer").

[13] The Complaint does not specify the actual distance Plaintiff travelled as a deliveryman, but it alleges that Plaintiff was "required to deliver between fifty (50) to sixty (60) orders, with a mile as the average delivery radius for each order." (Compl. ¶ 44). Considering these numbers, together with the fact that Plaintiff worked 72 hours a day, I find 55 miles a reasonable approximation of Plaintiff's average daily travel distance.

Plaintiff worked. Here too, Plaintiff's claim fails as a matter of law because there is no private right of action under NYLL § 162. See *Hill v. City of N.Y.*, 136 F. Supp. 3d 304, 350–51 (E.D.N.Y. 2015) (collecting cases where the court found no private right of action under Section 162); *Awan v. Durrani*, No. 14-CV-4562, 2015 WL 4000139, at *9 n.12 (E.D.N.Y. July 1, 2015). In addition, the calculation of unpaid wages due accounts for all hours in which Plaintiff worked and would exclude any unpaid meal breaks taken. *See Choudry v. Durrani*, No. 14-CV-4562 (SIL), 2016 WL 6651319, at *13 (E.D.N.Y. Nov. 10, 2016); *see also Daniels v. 1710 Realty LLC*, No. 10-CV-0022 (RER), 2011 WL 3648245, at *6 n.6 (E.D.N.Y. Aug. 17, 2011), *affirmed*, 497 F. App'x 137 (2d Cir. 2012) (accounting for lunch breaks by subtracting one hour per day from the plaintiff's total working hours for minimum wage calculation). Accordingly, Plaintiff is not entitled to additional compensation for the unpaid meal times.

## B. Wage Theft Prevention Act

The New York Wage Theft Prevention Act, effective April 9, 2011, and further amended on February 27, 2015, requires that every employer provide employees with a notice containing information on rates of pay at the time of hiring. N.Y. LAB. LAW § 195(1); *see also Guaman v. Krill Contracting*, No. 14-CV-4242 (FB) (RER), 2015 WL 3620364, at *8 (E.D.N.Y. June 9, 2015). All employers must also obtain "a signed and dated written acknowledgement . . . of receipt of this notice." N.Y. LAB. LAW § 195(1)(a). Plaintiff is entitled to the protection of Section 195(1) of the NYLL because

Defendant hired Plaintiff on March 8, 2016, after the Section's enactment. (Compl. ¶ 31).

Plaintiff sufficiently pleads a violation of the NYLL § 195(1) by alleging that Defendants failed to provide wage notice at time of hiring him and thereafter. I respectfully recommend that Plaintiff be awarded $5,000 in damages for Defendants' violations of Section 195(1).

Plaintiff also alleges Defendants violated the NYLL § 195(3), effective April 9, 2011, which requires employers to provide employees with a written statement of wages every pay period. Employees who do not receive a copy of this written statement may recover $250 per workday in statutory damages, up to a maximum of $5,000. N.Y. LAB. LAW § 198(1-d) (effective February 27, 2015).[14]

Plaintiff claims he never received Section 195(3) statements from Defendants. (Compl. ¶ 31). Since Plaintiff was employed after April 9, 2011, I respectfully recommend that Plaintiff be awarded $5,000 in damages for Defendants' violations of Section 195(3), which provides the maximum recovery under the statute for the entire period of his employment.

## C. Liquidated Damages

Plaintiff also seeks an award of liquidated damages under the FLSA and the NYLL. Both statutes provide for a liquidated damages award of 100% of actual damages. *See* 29 U.S.C. § 216(b); N.Y. LAB. LAW § 198(1-a). A plaintiff may not recover liquidated damages under both the NYLL and the FLSA. *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition) ("[T]he NYLL

---

[14] Section 195(3) of the NYLL originally permitted employees to recover $100 per week in statutory damages, with a maximum amount of $2,500. The Section was amended on February 27, 2015, to award

$250 per workday, with a cap of $5,000 for violations of the provision. N.Y. LAB. LAW § 198(1–d).

and FLSA liquidated damages provisions are identical in all material respects, serve the same functions, and redress the same injuries . . . . [W]e interpret the New York statute's provision for liquidated damages as satisfied by a similar award of liquidated damages under the federal statute."); *see also Sajvin v. Singh Farm Corporation*, No. 17-CV-4032 (AMD) (RER), 2018 WL 4214335, at *7 (E.D.N.Y. Aug. 13, 2018); *Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628 (SJ) (RER), 2016 WL 4124304, at *4 (E.D.N.Y. July 5, 2016); *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *6 (E.D.N.Y. June 17, 2015). Where, as here, a defendant is liable for liquidated damages under both statutes, the court should award liquidated damages under the statute that provides the greater recovery. N.Y. LAB. LAW § 198(1-a). Here, the NYLL governs, because the NYLL allows Plaintiff to recover liquidated damages for more claims.[15]

An employee can recover liquidated damages equal to the amount owed for unpaid wages under the NYLL, unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. LAB. LAW § 198(1-a). Since Defendants failed to file an answer or respond to this motion, and default judgment has been entered against them, the failure to pay Plaintiff is deemed willful. *See Herrera*, 2015 WL 1529653, at *12 (citing *Blue v. Finest Guard Services, Inc.*, No. 09-CV-133 (ARR) (CLP), 2010 WL 2927398, at

*11 (E.D.N.Y. June 24, 2010)). Plaintiff is therefore entitled to 100% of his damages for unpaid minimum wage ($1,736.43), unpaid overtime compensation ($45,640.94), motorcycle cost reimbursement ($15,999.82),[16] and spread-of-hours violations ($5,645.52) under the NYLL.[17] N.Y. LAB. LAW § 198(1-a). Accordingly, I respectfully recommend that Plaintiff be awarded $69,022.71 in liquidated damages.

### D.  Interest

#### 1.  Prejudgment Interest

Plaintiff also seeks prejudgment interest on all compensatory damages. (Compl. ¶ 3). Under the FLSA, pre-judgment interest is not available where liquidated damages have already been awarded. *Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), *R & R adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016). However, the NYLL allows courts to award plaintiffs prejudgment interest at an interest rate of 9% per annum, in addition to a liquidated damages award. N.Y. LAB. LAW § 198(1-a); N.Y. CPLR § 5004; *Espinoza v. Industrial Glass & Mirror, Inc.*, No. 16-CV-64 (ARR) (RER), 2016 WL 7650592, at *6 (E.D.N.Y. Nov. 30, 2016). To determine the date from which to award prejudgment interest, courts generally "select the median date between when the action was filed and the earliest date on which the cause of action

---

[15] Plaintiff is entitled to liquidated damages for monies awarded for his spread-of-hours claim, which is available under the 12 NYCRR 146-1.6, but not the FLSA. See *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *7 (E.D.N.Y. Mar. 17, 2016), *R & R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016) (finding the NYLL governs the liquidated damage calculation, because the NYLL includes "unpaid spread-of-hours wages as a predicate for its award of liquidated damages").

[16] *See Saigon Grill, Inc.*, 595 F. Supp. 2d at 267-282 (Liquidated damages under the NYLL § 198(1-a) includes the amount compensating for Plaintiff-deliverymen's cost of purchasing and maintaining motorcycles used for Defendants' benefits).

[17] Plaintiff is not entitled to liquidated damages for monies awarded under the Wage Theft Prevention Act. *See* N.Y. LAB. LAW § 198(1-d).

existed." *Id*. Thus, I recommend that Plaintiff be awarded pre-judgment interest on all claims other than those under the Wage Theft Prevention Act, at a rate of 9% per annum, to accrue from April 20, 2017, until entry of judgment.[18]

2. Post-judgment Interest

Plaintiff is also entitled to post-judgment interest pursuant to 28 U.S.C. Section 1961(a), which provides that post-judgment interest rates are calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1 year constant maturity [federal] Treasury yield, . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). The Second Circuit has found that an award of post-judgment interest under Section 1961 is "mandatory." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Accordingly, I respectfully recommend that Plaintiff be awarded post-judgment interest on all sums awarded, to be calculated from the date the Clerk of Court enters judgment until the date of payment.

E. Attorneys' Fees

Plaintiff seeks reasonable attorneys' fees and costs, which he is entitled to recover under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1). In the Second Circuit, the prevailing party can recover a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). This fee is calculated by multiplying the hours counsel reasonably spent on the litigation by a "reasonable hourly rate," which is based on the "prevailing [hourly rate] in the community . . . where the district court sits."

*Id.* (alteration in original); *E. Sav. Bank FSB v. Strez*, No. 11-CV-1543 (ENV) (LB), 2013 WL 6834806, at *4 (E.D.N.Y. Dec. 20, 2013).

a. Reasonable Hourly Rate

In order to determine the reasonable hourly rate in a community, courts examine the prevailing rates "for similar services of lawyers of reasonably comparable skill, experience and reputation" practicing in the area. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see generally Simmons*, 575 F.3d 170. Courts receive guidance from (1) rates awarded in prior cases; (2) their own knowledge of hourly rates charged in the district; and (3) evidence submitted by the parties. *See Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 208–09 (2d Cir. 2005). "[T]he nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 184, n.2.

The party seeking reimbursement of attorneys' fees bears the burden of establishing that the hourly rates requested are reasonable. *See generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Contemporaneous time records that include "the date, the hours expended, and the nature of the work done" must accompany the party's request for attorney fee reimbursement to establish that the standard of reasonableness has been met. *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, No. 07-CV-2568 (JG) (SMG), 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012) (quoting *Carey*, 711 F.2d at 1148).

This action is relatively straightforward, especially because

---

[18] Plaintiff is not entitled to prejudgment interest on monies awarded under the Wage Theft Prevention Act. *See Guaman*, 2015 WL 3620364, at *10.

Defendants defaulted. *See Encalada v. Baybridge Enters. Ltd.*, No. 14-CV-3113 (BMC), 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014), *aff'd*, 612 F. App'x 54 (2d Cir. Sept. 9, 2015) (noting that although "[t]here are some, relatively few, FLSA cases that raise complex issues," most "could hardly be simpler"); *Hyeon Soon Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007) ("[T]he Court notes that this case was relatively simple—all but one defendant defaulted and the FLSA and New York Labor Law are both straightforward"). Recent decisions in this District have found that $300–$400 per hour is the reasonable range for partners in typical FLSA cases, and $100–$150 per hour is reasonable for junior associates. *See, e.g.*, *Alvarez v. Sterling Portfolio Investment, LP*, No. 16-CV-5337 (CBA) (VMS), 2017 WL 8790990, at *8 (E.D.N.Y. Dec. 13, 2017) (collecting cases).

Here, Plaintiff's counsel has submitted contemporaneous billing records. (*See* Dkt. No. 18-4). Plaintiff seeks $450 per hour for partner John Troy ("Troy"), and $250 for associate Aaron Schweitzer ("Schweitzer"). (*Id.*) Plaintiff does not provide any information related to the qualification of these attorneys. However, the same two attorneys provided their qualifications in a recent case decided in this district. *See Zhong Fa Qin v. Sensation Neo Shanghai Cuisine, Inc.*, No. 15-CV-6399 (KAM) (PK), 2018 WL 5456653, at *9 (E.D.N.Y. Aug. 9, 2018), *R & R adopted*, 2018 WL 4853041 (E.D.N.Y. Oct. 4, 2018). There, Troy declared that he is the "principal" of Troy Law, PLLC, and has nine years' experience in handling wage-and-hour cases in this district. *Id.* Schweitzer declared himself to be a 2016 graduate from law school and stated that he was admitted to the Bar in 2018. *Id.* Considering this purported experience, and absent evidence to convince the Court otherwise, Troy and Schweitzer are considered "partner" and "junior associate,"

respectively, for the purpose of figuring out their reasonable rates.

In *Qin* and at least one other recent case in this district, the court awarded rates of $375 per hour to Troy and $100 per hour to Schweitzer. *Qin*, 2018 WL 5456653, at *9. *Li v. W. Metal Work & Supply*, No. 17-CV-1015 (JBW) (RML), 2019 U.S. Dist. LEXIS 32397, at *21 (E.D.N.Y. Feb. 26, 2019).

Balancing Troy's experience and the straightforward nature of the case, I respectfully recommend that the Court award Troy an hourly rate of $375, which is within the reasonable rate for partners in FLSA cases brought in this district. In light of the prevailing rates for junior associates in this district, his recent admission to the bar, and the nature of this case, I respectfully recommend reducing Schweitzer's hourly rate to $100 per hour. *See, e.g.*, *Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015), *aff'd*, 649 F. App'x 1 (2d Cir. 2016) ("Junior associates generally command $100 to $150 per hour").

b.     Reasonable Hours Expended

The second component in calculating attorneys' fees is determining the reasonable number of hours expended on the litigation. Courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Plaintiffs may support their claims for reasonable hours by submitting documentation detailing "the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148.

Plaintiff seeks 39.62 hours for Troy and 18.35 hours for Schweitzer through time records demonstrating the amount of time expended on litigation tasks. (*See* Dkt. No. 18-4). I find the number of hours grossly excessive, for cases with a similar procedural posture (i.e., a motion for default judgment,

11

with no other discovery or motion practice after filing of the complaint) typically require many fewer attorney hours. *See Jiaren Wei v. Lingtou Zhengs Corp.*, 13-CV-5164 (FB) (CLP), 2015 WL 739943, at *16 (E.D.N.Y. Feb. 20, 2015); *see also Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *14 (S.D.N.Y. May 14, 2012) (noting that "the high-end amount of hours" spent on such cases "is no more than 55 hours total"). In addition, the contemporaneous time records show unduly long hours for relatively straightforward tasks, some of which are purely clerical. *See Kliger v. Liberty Saverite Supermarket Inc*., No. 17-CV-02520 (FB) (ST), 2018 WL 4782342, at *10 (E.D.N.Y. Sept. 17, 2018) (finding the hours spent revising and redrafting documents excessive, and reducing the hours by 30%); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011) (reducing the legal fees by 7% due to the duplicative work); *Kahlil v. Original Old Homestead Rest., Inc*., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (applying a 15% reduction for excessive and vague billing and for time spent on purely clerical tasks). For example, there are two entries for reviewing and scanning the Proofs of Service, and several duplicative entries for research on liquor licenses, corporate and business entity information, and the property at the addresses. (*See* Dkt. No. 18-4). To correct this excess, I recommend a 20% reduction in hours, which reduces the total hours to 46.4 (31.7 hours for Troy, 14.7 hours for Schweitzer).

Accordingly, I respectfully recommend that Plaintiff be awarded $13,357.50 in attorneys' fees, consisting of $11,887.50 for Troy's fees ($375 x 31.7 hours) and $1,470 for Schweitzer's fees ($100 x 14.7 hours).

c.  Costs and Fees

Plaintiff also seeks to recover $779.50 in costs, consisting of $4.50 for the binder and label costs, $400 for the court filing fee, and $375 for the service fee. "Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable" if supported by sufficient documentation. *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (citing *Tips Exports, Inc. v. Music Mahal, Inc.*, No. 01-CV-5412 (SJF) (VVP), 2007 WL 952036, at *11 (E.D.N.Y. Mar. 27, 2007)).

Plaintiff has submitted sufficient documentary evidence for the court filing fee. (Dkt. No. 18-4); *see Tacuri v. Nithun Construction Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015) (noting that "a court can take judicial notice of the court's filing fee and award it" without Plaintiff's having submitted supporting evidence). However, Plaintiff failed to submit adequate documentary evidence in support of the recovery of the service fees, and the request for such service fee is accordingly denied. *Id. See also Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp*., No. 06-CV-0617 (RJD) (KAM), 2007 WL 841804, at *7 (E.D.N.Y. Jan. 16, 2007) (recommending denial of plaintiff's request for costs where plaintiff "submitted no documentary evidence in support of its request for $150 in costs"). In addition, the cost for office supplies is unrecoverable under 28 U.S.C. § 1920. *See Hogan v. Gen. Elec. Co.*, 144 F. Supp. 2d 138, 144 (N.D.N.Y. 2001) (Office supplies expenses, as "ordinary overhead," are deducted from the plaintiff's application); *Blanco v. Biscayne Wine Grp., LLC*, No. 10-CV-23988, 2014 WL 2653922, at *5 (S.D. Fla. June 13, 2014) (Reimbursement for "costs associated with the binders and the

tabs" is not authorized under 28 U.S.C. § 1920(4)).

Therefore, I respectfully recommend that Plaintiff only be awarded $400 in costs for the court filing fee.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that: (1) the Court grant Plaintiff's motion for a default judgment against New Fresca Tortillas, Da Zhong Li, and Cindy Li, jointly and severally; (2) the Court award Plaintiff damages totaling $148,045.42 (consisting of $1,736.43 in unpaid minimum wage, $45,640.94 in unpaid overtime compensation, $5,645.52 in spread-of-hours compensation, $15,999.82 in motorcycle costs, $69,022.71 in liquidated damages, and $10,000 in statutory damages), plus pre- and post-judgment interest; (3) the Court award Plaintiff $13,357.50 in attorneys' fees and $400 in costs.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Raymond J. Dearie within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge
Dated: May 1, 2019
Brooklyn, New York

13